# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GUIMIN ZHANG, ET AL. *Plaintiffs,* v. MICHAEL CHERTOFF, ET AL. *Defendants.* | CIVIL NO. 3:06cv00066 MEMORANDUM OPINION and ORDER JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and/or Failure to State a Claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively, filed on February 16, 2007 (docket entry no. 15). For the following reasons, the Motion to Dismiss for Lack of Subject Matter Jurisdiction will be GRANTED.

## *I. Background*

Plaintiffs Zhou Yu ("Yu") and Guimin Zhang ("Zhang"), husband and wife (collectively, "Plaintiffs"), are married natives and citizens of China who currently reside legally in the United States. On September 2, 2004, Plaintiffs filed an I-485 application to adjust their status to permanent resident status. Plaintiffs have appeared for required fingerprint and biometrics appointments with United States Citizen and Immigration Services ("USCIS"). The adjudication of an I-485 application requires three background and security checks: a Federal Bureau of Investigation ("FBI") fingerprint check, a check against the Interagency Border Inspection System watch list, and an FBI name check. In January 2006, Plaintiffs began inquiring into the

status of their cases. On all occasions, Plaintiffs were told that the processing of their applications was ongoing. To date, Yu's application has not been adjudicated because the required FBI name check has not been completed; Zhang's background and security checks have been completed, but because Zhang's application is derivative of Yu's, her application cannot be adjudicated until all required checks are completed on Zhang. Thus, the application of neither Plaintiff has yet been adjudicated because of the name check that is outstanding on Yu.

On December 13, 2006, Plaintiffs filed a complaint seeking to have Defendants adjudicate their I-485 applications. On February 16, 2007, Defendants filed a motion to dismiss claiming that this Court lacks subject matter jurisdiction or, alternatively, that Plaintiffs have failed to state a claim.

## *II. Standard of Review Under Rule 12(b)(1)*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute...." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may move to dismiss a civil action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "[T]he burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction in addition to presenting other defenses, questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 (4th Cir. 1999). If the court lacks subject matter jurisdiction, it must dismiss the case. *See* Fed. R. Civ. P. 12(h)(3).

## *III. Analysis*

In 2005, Congress stripped courts' jurisdiction over discretionary "decision[s] or action[s]" made by the Attorney General or Secretary of Homeland Security that relate to certain immigration issues. *See* 8 U.S.C.A. § 1252(a)(2)(B)(ii) (West 2007) (providing that "no court shall have jurisdiction to review ... any ... decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security"). The adjustment of an alien's status is, by law, such an immigration issue left to the discretion of the Attorney General. *See* 8 U.S.C.A. § 1255(a) (West 2007) ("The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe ....").

Defendants contend that § 1252(a)(2)(B)(ii) divests this Court of subject matter jurisdiction because they claim that § 1255(a) commits the entire application process to the discretion of the Attorney General. Plaintiffs argue that the statute does not divest jurisdiction because the application process is not a "decision or action" as required by § 1252(a)(2)(B)(ii) and that the discretion of the Attorney General does not extend to the timing of application processing.

The first issue is whether the application process with which Plaintiffs take issue is a "decision or action," as required by § 1252(a)(2)(B)(ii). In *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006), the United States District Court for the Eastern District of Virginia held that the term "action" includes "*any* act or series of acts that is discretionary within the adjustment of status process." *Safadi*, 466 F. Supp. 2d at 699. Black's Law Dictionary, cited in Plaintiffs' brief

-3-

(Pls.' Resp. to Defs.' Mot. to Dismiss 5), defines "action" as "[t]he process of doing something; conduct or behavior." Black's Law Dictionary 31 (8th ed. 2004). The numerous background checks USCIS has run on Plaintiffs in response to their applications are certainly "the process of doing something." Defendants offer a declaration by Bradley J. Brouillette, a USCIS officer familiar with Plaintiffs' applications, in support of their motion to dismiss ("Brouillette Declaration"). The Brouillette Declaration enumerates the background and security checks that USCIS has run on Plaintiffs, as well as the background checks with results still outstanding, specifically the FBI name check. (Brouillette Decl. ¶¶ 8-15) I accept the Brouillette Declaration as sufficient evidence that these application procedures represent a "process of doing something" with respect to Plaintiffs' applications, and thus an "action" for purposes of § 1252(a)(2)(B)(ii).

The second issue, then, is whether the discretion of the Attorney General to adjust the status of an alien includes the pace at which applications for such adjustments are processed. The authority to adjust the status of an alien is found in 8 U.S.C. § 1255(a), which provides that "[t]he status of an alien... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." 8 U.S.C.A. §1255(a) (West 2007). Though the text of § 1255(a), as enacted, gives the Attorney General the authority to adjudicate adjustment of status applications, that authority has since been transferred to the Secretary of Homeland Security and his delegate in USCIS. *See* 6 U.S.C.A. § 271(b)(5) (West 2007); 6 U.S.C.A. 557 (West 2007). Pursuant to this discretionary authority, USCIS has established the regulatory scheme for adjudication of these applications, which includes no fewer than three background and security checks. USCIS's discretion to promulgate such regulations is clear under § 1255(a). The issue is whether § 1252(a)(2)(B)(ii) "serves to preclude judicial review of the pace or nature of the process USCIS has implemented

- 4 -

to execute its discretionary authority to adjust plaintiff's status." *Safadi*, 466 F. Supp. 2d at 698 (stating, too, that "[i]n other words, the question is whether the term 'action' encompasses the pace at which USCIS processes an adjustment of status applications").

Though Plaintiffs left the jurisdictional constraints of § 1252(a)(2)(B)(ii) largely unaddressed at the hearing, their most compelling argument is that § 1255(a) "specifies only that it is within the discretion of [USCIS] to adjust one's status; it does not address, much less specify any discretion associated with the *pace* of application processing." *Elmalky v. Upchurch*, No. 3:06-CV-2359-B, 2007 WL 944330, at *5 (N.D. Tex. Mar. 28, 2007) (emphasis added); See *also Duan v. Zamberry*, 2007 WL 626116, at *2 (W.D. Pa. Feb. 23, 2007). However, such an argument rests on the untenable distinction between the adjustment decision, which is clearly within USCIS' discretion under § 1255(a), and the processing required to render that decision. *See Safadi*, 466 F. Supp. 2d at 700. A holding that USCIS does not have discretion over the pace of application processing would lead to the illogical conclusion that USCIS must reach an unreviewable decision within a reviewable period of time.

Notably absent from § 1255(a) is the imposition of any time constraints on the adjudication of an adjustment application. If Congress had intended for the pace of adjudication of adjustment applications to be subject to judicial review, it could have expressly offered a standard with which to measure the lapse of time. *See Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (stating that "if Congress intended to confer jurisdiction on a federal court to review the pace of adjudication for adjustment of status applications, it would have expressly provided for a time limitation" and the fact "[t]hat Congress did not do so here reflects its intent to leave the pace of adjudication discretionary with [USCIS] and outside the scope of judicial review"). The fact that other immigration laws impose specific time constraints on

adjudication makes the absence of a timeframe in § 1255(a) even more conspicuous. *See* 8 U.S.C.A. § 1447(b) (West 2007) (allowing judicial review if a naturalization application is not adjudicated within 120 days after examination). "The absence of any such reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion." *Safadi*, 466 F. Supp. 2d at 699. The precatory language of § 1255(a)— that status "may be adjusted," "in [USCIS's] discretion," and "under such regulations as [it] may prescribe"— evidences substantial legislative deference to USCIS's administrative prerogative in determining the best way to adjudicate applications, which is not surprising given the national security implications of immigration regulation. The broad discretion afforded USCIS is necessary to permit the agency to adjudicate applications only after conducting the necessary security and background checks arising from the application.

Additionally, implicit in the grant of discretion by § 1255(a) to establish "such regulations as [USCIS] may prescribe" is the duration associated with completing the actions mandated by these regulations. Congress likely did not contemplate that courts would meddle with this unadulterated discretion by imposing temporal constraints on the requisite background and security checks mandated by USCIS. The regulations that USCIS has prescribed dictate that Plaintiffs' applications cannot be adjudicated until these background checks have been completed. Defendants have presented evidence that Plaintiffs' applications are being processed. (*See* Brouillette Decl.) I find that this evidence is sufficient proof of USCIS's actions in processing Plaintiffs' applications; to hold otherwise would require a judicial foray into the nature of the background and security checks that are wholly within USCIS's discretion to prescribe.

The Brouillette Declaration also makes it clear that this is not a case in which USCIS has refused to adjudicate or process an application, but instead is one in which Plaintiffs are dissatisfied with the pace of processing.[1] I am sympathetic to Plaintiffs' frustrations, but "Congress, rather than a federal court, is the proper governmental body to fashion a remedy." *E.g. Grinberg*, 478 F. Supp. 2d at 1352. "A contrary conclusion would require judicial review in the absence of statutory standards, an unsound result surely not intended by Congress." *Safadi*, 466 F. Supp. 2d at 699. In the recent decision *Li v. Chertoff*, 482 F. Supp. 2d 1172 (S.D. Cal. 2007), the court found that the government "provided sufficient evidence to demonstrate that any delay in adjudicating Plaintiff's I-485 application [was] not due to agency inaction, but rather to the time required to resolve all concerns of a law enforcement or national security nature." *Li*, 482 F. Supp. 2d at 1178. The same is true with regard to the Government's evidence here. USCIS, in concert with the other agencies involved in the process, has completed five of the six checks required for the adjudication of Plaintiffs' applications. Only a single background check remains unresolved.

Under § 1255(a), USCIS has the clear discretion to establish the regulations governing changes of status; accordingly, it has established the background checks that must be completed in order to adjudicate an application. All of the checks needed to adjudicate Plaintiffs' applications have not yet been completed. To force USCIS to adjudicate Plaintiffs' applications within a set of court-imposed constraints would limit USCIS's discretion in a way not contemplated by the statute. Accordingly, the preclusion of judicial review over a discretionary act of USCIS "encompasses *any* act or series of acts that are discretionary within the adjustment

---

[1] Because the Brouillette Declaration makes it clear that this is not a case in which administrative bodies have refused to process the application, this opinion does not address the issue of jurisdiction stripping in such a case.

of status process, including the pace of this process." *Grinberg*, 478 F. Supp. 2d at 1353-54 (internal quotation marks omitted).

## *IV. Conclusion*

Section 1252(a)(2)(B)(ii) divests this Court of jurisdiction over a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security." Because I read § 1255(a) to give USCIS discretion over the entire application process, including its pace, this Court does not have subject matter jurisdiction over the instant case. For the foregoing reasons, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket entry no. 15) is hereby GRANTED,[2] this case is hereby DISMISSED, and the Clerk of the Court is hereby ordered to STRIKE this case from the Court's docket.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Opinion and order to all counsel of record.

ENTERED: *Norman K. Moon*
United States District Judge

Date: June 19, 2007

---

[2] Because I am dismissing this case for lack of subject matter jurisdiction under §1252(a)(2)(B)(ii), I will not address Plaintiffs' arguments regarding mandamus jurisdiction or the Administrative Procedures Act.

- 8 -